UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FRANK GALLO,<br><br>    Plaintiff,<br><br>  v.<br><br>MTS SYSTEMS CORPORATION, DAVID J. ANDERSON, RANDY J. MARTINEZ, NANCY ALTOBELLO, DAVID D. JOHNSON, MICHAEL V. SCHROCK, CHUN HUNG YU, and LINDA ZUKAUCKAS,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Frank Gallo ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against MTS Systems Corporation ("MTS" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17

C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which MTS will be acquired by Amphenol Corporation ("Amphenol"), through its wholly owned subsidiary Moon Merger Sub Corporation ("Merger Sub") (the "Proposed Transaction").

2. On December 9, 2020, MTS and Amphenol issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated December 8, 2020 (the "Merger Agreement"). Under the terms of the Merger Agreement, each MTS stockholder will receive $58.50 per share in cash for each share of MTS common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $1.7 billion, including the assumption of outstanding debt and liabilities, net of cash.

3. On January 28, 2021, MTS filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that MTS stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial analyses supporting the fairness opinions provided by the Board's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Evercore Group L.L.C. ("Evercore"); and (ii) potential conflicts of interest faced by Company insiders. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, MTS' public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. MTS maintains and operates a corporate office and

manufacturing facility in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of MTS.

9. Defendant MTS is a Minnesota corporation with its principal executive offices located at 14000 Technology Drive, Eden Prairie, Minnesota 55344.  MTS maintains a corporate office in Swartz Creek, Michigan and a manufacturing facility in Rochester Hills, Michigan.  MTS produces testing and simulation hardware, software and service solutions used for determining the mechanical behavior of materials, products and structures.  MTS' common stock trades on the Nasdaq Global Select Market under the ticker symbol "MTSC."

10. Defendant David J. Anderson ("Anderson") serves as Chairman of the Board and has been a director of the Company since January 2009.

11. Defendant Randy J. Martinez ("Martinez") has been MTS' President and Chief Executive Officer ("CEO") since December 2020 and a director of the Company since March 2014.

12. Defendant Nancy Altobello ("Altobello") has been a director of the Company since April 2019.

13. Defendant David D. Johnson ("Johnson") has been a director of the Company since January 2013.

14. Defendant Michael V. Schrock ("Schrock") has been a director of the Company since March 2014.

15. Defendant Chun Hung Yu ("Yu") has been a director of the Company since January 2013.

16. Defendant Linda Zukauckas ("Zukauckas") has been a director of the Company since April 2019.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Amphenol is a Delaware corporation with its principal executive offices located at 358 Hall Avenue, Wallingford, Connecticut 06492. Amphenol is one of the world's largest designers, manufacturers and marketers of electrical, electronic and fiber optic connectors, interconnect systems, antennas, sensors and sensor-based products and coaxial and high-speed specialty cable. Amphenol designs, manufactures and assembles its products at facilities in the Americas, Europe, Asia, Australia and Africa and sells its products through its own global sales force, independent representatives and a global network of electronics distributors.

Amphenol's common stock trades on the New York Stock Exchange under the ticker symbol "APH."

19. Merger Sub is a Minnesota corporation and wholly owned subsidiary of Amphenol.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20. MTS is a leading global supplier of advanced test systems, motion simulators and precision sensors. The Company's operations are organized and managed in two reportable segments: (1) Test & Simulation and (2) Sensors. The Test & Simulation and Sensors segments represented 59% and 41% of MTS' revenue, respectively, for the fiscal year ended October 3, 2020.

21. The Company's Test & Simulation segment provides testing and simulation solutions including hardware, software and services that are used by customers in product development to characterize a product's mechanical properties along with simulation systems for human response features. MTS' solutions simulate forces and motions that customers expect their products to encounter in use.

22. The Company's Sensors segment is a global leader in sensing technologies and solutions used worldwide by design engineers and predictive maintenance professionals. MTS' high-performance sensors provide measurements of vibration, pressure, position, force and sound in a variety of applications.

23. On December 15, 2020, MTS announced its fiscal year 2020 fourth quarter financial results, including adjusted diluted earnings per share of $0.95, improved from $0.37 in the same period of the prior year, and adjusted EBITDA of $31.3 million, compared to adjusted EBITDA of $29.6 million in the same fiscal quarter of 2019. Backlog for the Company remained strong at $457.6 million, reflecting an increase of 8.9% compared to the prior year.

**The Proposed Transaction**

24. On December 9, 2020, MTS and Amphenol issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> WALLINGFORD, Conn. & EDEN PRAIRIE, Minn.--Amphenol Corporation (NYSE: APH) ("Amphenol"), a leading global provider of high-technology interconnect, antenna and sensor solutions, and MTS Systems Corporation (Nasdaq: MTSC) ("MTS"), a leading global supplier of advanced test systems, motion simulators and precision sensors, today announced that they have entered into a definitive agreement under which Amphenol will acquire MTS for $58.50 per share in cash, or approximately $1.7 billion, including the assumption of outstanding debt and liabilities, net of cash.
>
> "We have long admired MTS's technology and position across a variety of attractive end markets," said R. Adam Norwitt, Amphenol's President and CEO. "This acquisition is consistent with our strategy of continuing to expand our range of sensor and sensor-based products across a wide array of industries to further capitalize on the long-term growth potential of the electronics revolution. We are extremely excited about the strength of our combined product portfolio which will enable us to offer even more innovative technologies to our customers around the world. I look forward to welcoming the talented MTS team to the Amphenol family."

"Amphenol is a leader in interconnect and sensor technologies with a proven management team and a strong track record of successfully acquiring companies across its platform," said Randy J. Martinez, MTS's Interim President and CEO. "MTS brings to Amphenol its high-quality technology solutions, a diversified customer base of blue-chip companies and a strong financial profile. We could not be more pleased to join forces with Amphenol, which will allow us to continue to deliver exceptional customer experience through high-quality and innovative solutions."

David J. Anderson, Chairman of MTS's Board of Directors, concluded, "The MTS Board of Directors is pleased, as a result of its strategic review, to deliver MTS Systems shareholders the value inherent in this transaction. I have full confidence that, together with Amphenol, MTS will continue to engineer technologies that meaningfully improve and modernize the world's products – for the benefit of its customers – for generations to come."

MTS is organized into two business segments: Sensors and Test & Simulation. The Sensors segment represents a highly complementary offering of high-technology, harsh environment sensors sold into diverse end markets and applications, and positions Amphenol to have one of the industry's broadest ranges of sensors and sensor-based products. The Test & Simulation segment is an industry leader and Amphenol believes it represents an attractive business with excellent near and long-term potential. Accordingly, Amphenol plans to undertake a strategic review of the business to best position it for future success.

The acquisition of MTS is expected to be accretive to Amphenol's earnings per share in the first year after closing, with approximately $0.10 and $0.06 attributable to MTS's Sensors and Test & Simulation segments, respectively. This assumes the post-closing reduction of certain public company costs. The transaction will be financed through a combination of borrowings under Amphenol's existing credit and commercial paper facilities as well as cash on hand.

The transaction has been unanimously approved by the boards of both companies and is expected to close by the middle of 2021, subject to

certain regulatory approvals, approval from MTS's shareholders and other customary closing conditions.

**Insiders' Interests in the Proposed Transaction**

25. MTS insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of MTS.

26. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Amphenol. Pursuant to the Merger Agreement, all outstanding options and restricted stock units ("RSUs") will vest and convert into the right to receive cash payments. The following tables summarize the value of the Company options and RSUs that Company insiders stand to receive:

| Non-Employee Directors | Number of Restricted Stock Units (#)(1) | Value of Restricted Stock Units ($)(1) |
|---|---|---|
| David J. Anderson | 7,976 | 466,596 |
| Nancy Altobello | 4,510 | 263,835 |
| David D. Johnson | 14,070 | 823,095 |
| Michael V. Schrock | 2,695 | 157,658 |
| Kenneth Yu | 2,695 | 157,658 |
| Linda Zukauckas | 2,695 | 157,658 |

| Executive Officers | Number of Stock Options (#)(1) | Value of Stock Options ($)(2) |
|---|---|---|
| Randy J. Martinez* | 0 | 0 |
| Brian T. Ross | 30,090 | 222,769 |
| Steven B. Harrison | 16,480 | 203,788 |
| David T. Hore | 17,899 | 188,562 |
| Todd J. Klemmensen | 15,640 | 122,617 |

| Executive Officers | Number of Restricted Stock Units (#) | Value of Restricted Stock Units ($)(1) | Number of Unvested Company options (#) | Value of Unvested Company options ($)(2) |
|---|---|---|---|---|
| Randy J. Martinez* | 36,859 | 2,156,252 | 0 | 0 |
| Brian T. Ross | 25,097 | 1,468,175 | 14,142 | 151,034 |
| Steven B. Harrison | 36,085 | 2,110,973 | 13,878 | 216,947 |
| David T. Hore | 20,031 | 1,171,814 | 11,030 | 118,100 |
| Todd J. Klemmensen | 15,571 | 910,904 | 8,411 | 89,865 |

27. Moreover, if they are terminated in connection with the Proposed Transaction, MTS' named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash ($) (1) | Equity ($)(2) | Pension/ NQDC | Perquisites/ Benefits ($) (3) | Tax Reimbursement (4) | Other | Total ($) |
|---|---|---|---|---|---|---|---|
| Randy J. Martinez | 1,440,000 | 2,156,252 | 0 | 0 | 0 | 0 | 3,596,252 |
| Brian T. Ross | 1,662,242 | 1,619,208 | 0 | 11,725 | 0 | 0 | 3,293,175 |
| Steven B. Harrison | 1,664,174 | 2,327,919 | 0 | 2,776 | 0 | 0 | 3,994,869 |
| David T. Hore | 1,680,048 | 1,289,914 | 0 | 30,834 | 0 | 0 | 3,000,796 |
| Todd J. Klemmensen | 1,236,229 | 1,000,769 | 0 | 1,593 | 0 | 0 | 2,238,591 |
| Jeffrey A. Graves(5) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

### The Proxy Statement Contains Material Misstatements or Omissions

28. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to MTS' stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

29. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the financial analyses supporting the fairness

opinions provided by the Board's financial advisors, J.P. Morgan and Evercore; and (ii) potential conflicts of interest faced by Company insiders.

***Material Omissions Concerning J.P. Morgan's and Evercore's Financial Analyses***

30. The Proxy Statement omits material information regarding J.P. Morgan's and Evercore's financial analyses.

31. The Proxy Statement describes J.P. Morgan's and Evercore's fairness opinions and the various valuation analyses they performed in support of their opinions. However, the description of J.P. Morgan's and Evercore's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, MTS' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's and Evercore's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

32. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) MTS' terminal year unlevered free cash flow; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.0%; and (iii) quantification of MTS' terminal value.

33. With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed in the analysis; and (ii) the sources thereof.

34. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) MTS' terminal year unlevered free cash flow; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.0%; (iii) quantification of MTS' terminal value; (iv) the Company's estimated net debt; and (v) MTS' fully diluted outstanding shares.

35. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

36. With respect to Evercore's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

37. With respect to Evercore's *Sum-of-the Parts Analysis*, the Proxy Statement fails to disclose: (i) a quantification of the debt and debt-like items, including capitalized lease obligations and unfunded pension plans; (ii) cash projected as of October 3, 2020; and (iii) MTS' fully diluted outstanding shares.

38. With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

39. Without such undisclosed information, MTS stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan

and Evercore were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that positive fairness opinions could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's and Evercore's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

40. The omission of this material information renders the statements in the "Financial Projections" and "Opinions of the Company's Financial Advisors" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

41. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

42. The December 9, 2020 joint press release announcing the Proposed Transaction quotes Amphenol's President and CEO R. Adam Norwitt as stating, "I look forward to welcoming the talented MTS team to the Amphenol family." Similarly, defendant Martinez is quoted as stating, "[w]e could not be more pleased to join forces with Amphenol[.]"  Yet, the Proxy Statement fails to disclose whether any members of MTS management have secured employment with the combined

company as well as the details of any employment and retention-related discussions and negotiations that occurred between Amphenol and MTS executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Amphenol's proposals or indications of interest mentioned management retention or participation in the combined company.

43. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for MTS' stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

45. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and

the other MTS stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

46.   Plaintiff repeats all previous allegations as if set forth in full.

47.   During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48.   By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by J.P. Morgan and Evercore and Company insiders' potential conflicts of interest.  The defendants were at least

negligent in filing the Proxy Statement with these materially false and misleading statements.

49. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

50. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

52. Plaintiff repeats all previous allegations as if set forth in full.

53. The Individual Defendants acted as controlling persons of MTS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MTS, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

56. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, MTS' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of MTS, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to MTS stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 9, 2021

**WEISSLAW LLP**

By /s/ *Richard A. Acocelli*
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*